UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20668-CR-MIDDLEBROOKS/MCALILEY

UNITED STATES OF AMERICA,

     Plaintiff,

v.

BYRAMJI MONECK JAVAT,

     Defendant.

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT JAVAT'S MOTION TO SUPPRESS ELECTRONIC AND DOCUMENTARY EVIDENCE

Defendant Byramji Moneck Javat ("Javat") has filed a Motion to Suppress Electronic and Documentary Evidence, (ECF No. 177), which the Honorable Donald M. Middlebrooks has referred to me, (ECF No. 178). The Motion is fully briefed (ECF No. 228, 241, 260, 261),[1] and the Court held an evidentiary hearing on July 9, 2019.[2]

Javat's motion, as modified by his reply memorandum, makes two Fourth Amendment claims: first, that the government's warrantless seizure from Javat of his electronic devices, at the time of his arrest, was not made lawful by the search incident to arrest doctrine,[3] and second, that the government unreasonably delayed applying for a search warrant to search those devices. Two witnesses testified for the government at the

---

[1] At my direction, (ECF No. 229, 246), the parties filed supplemental briefing.

[2] The transcript of that hearing is filed at ECF No. 259, and is cited here as Tr. at ___.

[3] Defendant first made this argument in his reply memorandum (ECF No. 241), in response to the government's disclosure, in its response memorandum (ECF No. 228), that it did not assert that Javat consented to the government's warrantless seizure of his electronics. *See* Order Requiring Defense Reply and Limiting Scope of Evidentiary Hearing. (ECF No. 229).

hearing: Eric Flagg ("Flagg")[4], and Justin Fielder ("Fielder"), both of whom are Special Agents with the Food and Drug Administration's Office of Criminal Investigation ("FDA/OCI").

For the reasons that follow, I recommend that the Court grant Javat's Motion, and I summarize my reasoning here. First, I conclude that the warrantless search of Javat's messenger bag, at some unknown time after his arrest, was in violation of the Fourth Amendment, and that this requires that Javat's electronic devices, and all evidence seized from them, and evidence derived therefrom, be excluded from evidence in this prosecution. If the Court accepts this recommendation, this alone supports the suppression of evidence.

I nonetheless proceed to Javat's second and alternative argument, of unreasonable delay, which requires the Court to balance the government's and Javat's interests. If the Court adopts my analysis and conclusion on Javat's first argument, then, as I explain in Section II (B), I believe this requires the conclusion that the government's twenty-day delay in securing a search warrant for Javat's devices, was constitutionally unreasonable, and this would be a second justification for the exclusion of evidence. If, however, the Court were to not agree with my conclusion on the first argument, this would alter the

---

[4] The government arrived at the evidentiary hearing without a witness to support its reliance upon the search incident to arrest doctrine, to justify its warrantless seizure of the electronic devices that is the subject of this Motion. The government erroneously assumed that the Court would find that Javat failed to allege sufficient facts in support of its Motion to support a hearing on that issue. As an accommodation to the government, and with Defendant's agreement, I permitted the government's witness, Agent Flagg to testify by telephone. The parties exchanged documents needed for the questioning in advance of his testimony, and both counsel were able to effectively question Flagg, whose testimony was clear.

balancing analysis, such that the twenty-day delay in securing a search warrant was constitutionally reasonable, and would not justify suppression.

## I.   Factual Findings

On August 7, 2018, an Indictment was filed with this Court under seal that charged Javat, and five co-defendants, with wire fraud and conspiracy to commit wire fraud, theft of pre-retail medical products and conspiracy to obtain pre-retail medical products by fraud or deception. (ECF No. 3).[5] The Clerk of the Court issued arrest warrants for the defendants, also under seal, the same day. (ECF No. 4).

### A.   Javat's Arrest and the Seizure of his Electronics

Agent Fielder, who is the case agent on this matter, coordinated the arrests of the defendants. The government knew that Javat resided in the United Arab Emirates, (ECF No. 3, p. 2) and believed that he traveled to the United States only a few times a year. Once the arrest warrants were issued, Agent Fielder tasked another agent with researching Javat's location. Fielder was surprised to learn only days later, on or about August 16 or 17, 2018, that Javat was in the United States, and had tickets for a flight that would depart the country on Saturday, August 18, 2018, from the Dulles International Airport, in the metropolitan Washington, D.C. area.

Fielder asked for assistance from the FDA/OCI Metropolitan Washington Field Office, to arrest Javat at the Dulles airport, and Agent Flagg was assigned the task. Flagg knew nothing about the investigation before that time. Fielder "kind of gave him a brief overview," (Tr. at 65), sent Flagg a photo of Javat, and his travel information and the arrest

---

[5] That Indictment has since been superseded. (ECF No. 145).

warrant.[6] In preparation, Flagg contacted the Airport Authority police department to arrange for the assistance of uniformed officers.

On Saturday August 18, 2018, at about 8:30 am, Flagg and his FDA/OCI colleague, Agent Kurisky, arrived at the Dulles airport where they met two uniformed airport officers.[7] Javat had tickets with Porter Airlines, and that ticket counter, at the departure level of the airport, was closed at the time. Soon after 9:00 am, Flagg saw Javat and his wife and two children arrive at the Porter Airline ticket counter. They were the only travelers at the ticket counter. At Flagg's request, the uniformed officers approached Javat and confirmed his identity. At that point Flagg walked over to Javat, identified himself and displayed his credentials, and told Javat that he had a warrant for his arrest.

Flagg saw that Javat had entered the airport with a roller suitcase and a messenger bag. Javat's wife and children also had luggage with them. At the time of his arrest, Javat's suitcase was at his feet, and his messenger bag was either over his shoulder, or resting on top of his suitcase. His family's luggage was also nearby, within Javat's reach. Flagg asked Javat for his electronics. Javat, who was very cooperative, removed a Samsung smartphone from either his pants or blazer pocket, and handed it to Agent Kurisky. Javat said that he had a laptop computer in his messenger bag, and he handed the bag to Flagg. Flagg took

---

[6] Rule 4(c)(3)(A) requires officers who execute an arrest warrant to show the warrant to the defendant, or if the officer does not possess the warrant, the officer must inform the defendant of the offenses charged. FED. R. CRIM. P. 4(c)(3)(A). Although neither government witness testified that Flagg had read the arrest warrant, Flagg did testify that he told Javat that he had a warrant for his arrest. (Tr. at 97, 99). Javat made no claim that the government failed to comply with Rule 4 in the execution of that warrant, and I make the inference that Flagg read the arrest warrant.

[7] A third uniformed officer arrived later, as Flagg spoke with Javat.

the cellphone, messenger bag, and Javat's suitcase, and escorted Javat to the curb outside

the airport terminal, where he patted him down, placed Javat inside his car, and put the

luggage in the trunk.[8]  Flagg did not ask for or search Javat's family, or their luggage, nor

did he search Javat's suitcase or messenger bag at the airport. He had Javat give his wallet

and watch to his wife, before they left the airport. (Tr. at 106-7). Flagg gave his business

card to Javat's wife, and transported Javat to the jail.

Sometime later, and Flagg did not say when, he searched Javat's messenger bag and

suitcase. It was only then that he learned that three additional Samsung smartphones were

inside the messenger bag. (Tr. 100-101).[9]  On September 4, 2018, Mrs. Javat emailed

Flagg, with a copy to the lawyer who was representing Javat in Virginia at that time, to ask

for the return of her husband's belongings. (Tr. at 108-09). The next day, on September 5,

2018, Flagg delivered Javat's belongings to the office of the Virginia attorney, with the

exception of the laptop and four cell phones, which he retained as evidence. (Tr. at 110).

He also provided the attorney a copy of the Inventory of Evidence he had prepared, that

listed the five electronic devices. Later, at Fielder's direction, Flagg arranged to ship the

---

[8]  Flagg did not explain, at the hearing, why he asked for Javat's electronics, nor did he explain why he seized Javat's suitcase, other than to say that he took all items incident to arrest. (Tr. at 100.) Flagg testified that, regardless of their contents, he intended to take Javat's suitcase and messenger bag upon his arrest. (Tr. at 114).

[9]  Notably, the next day, Sunday August 19, 2018, Fielder, the case agent, knew only that Flagg had seized "a cell phone and a laptop." Def. Ex. 4 (email from Fielder to AUSA's Turken and Watson). In fact, it appears that it was not until ten days later, on August 29, 2018, when Flagg notified Fielder that he had seized *four* cellphones, and a laptop. Def. Ex. 5 (emails between Flagg and Fielder). The Inventory of Evidence, that Flagg prepared, and which lists those five electronic devices, is dated the same day, August 29, 2018. Def. Ex. 6. None of these documents disclose when Flagg opened and searched the messenger bag and suitcase.

cell phones and the laptop to Fielder, in Miami. At the evidentiary hearing, the government was unable to identify which Samsung cellphone was seized from Javat's person, and which three Samsung cellphones were found in his messenger bag. Tr. at 60.[10]

**B.    Preparation of the search warrant**

On September 7, 2018, twenty days after Javat's arrest, Agent Fielder presented an application for a search warrant for Javat's five electronic devices to a Magistrate Judge of this Court. That Judge issued a search warrant for the devices that same day.

During this period of time Agent Fielder served as the Assistant Special Agent in Charge of the local FDA/OCI field office, located in Plantation Florida. As a supervisor, Fielder's responsibilities included overseeing other agents' investigations, and approving their reports and their leave. The field office was short-staffed at that time and applicants for open law enforcement positions were being interviewed. Fielder did not participate in the interviews, but he did review some resumes. Thus, during this twenty day period, some of Fielder's time was devoted to his supervisory duties. In addition, Fielder had other cases or investigations, aside from this one, that he worked on in this timeframe.

Javat was the first of the defendants in this case to be arrested, and on the day of his arrest Fielder began to coordinate the arrests of the other five defendants. This required Fielder to communicate with other law enforcement officers about "manpower, logistics

---

[10]  Agent Fielder was questioned as follows:
"Q. Okay. Do you know which of the four cell phones was the cell phone on Mr. Javat's person?
A. No, I don't.
Q. And did you ever know?
A. No."
Tr. at 60.

and things of that nature" and required him to "review reports." (Tr. at 36). On Monday, August 20, 2018, Defendants Luis Soto and Emanuel Daskos were arrested in this District and had their initial appearances before the Miami Division of this Court. That same day Defendant James Sipprell was arrested in the Northern District of Georgia, where he resides. Fielder interviewed Defendant Sipprell by telephone at the time of his arrest.

On Tuesday, August 21, 2018, Fielder travelled to the Eastern District of Virginia District Court to attend Javat's pretrial detention hearing, which took place the following day, and which resulted in an order that Javat be held without bond.[11] Fielder prepared, with both the lead prosecutor here, and the Virginia Assistant U.S. Attorney who handled the hearing, to testify at that hearing, although as it turned out, Fielder did not testify. Fielder traveled back to this District on Wednesday, August 23, 2018, and then focused on the arrest of the remaining defendants, Sunil Chopra and William Armando, who were in Chicago and California, respectively.[12]  Fielder had first spoken with Chopra and Armando by telephone on Monday, August 20, 2018, and advised them of the arrest warrants. This led Fielder to speak with their attorneys to coordinate the defendants' surrenders and initial appearances before this Court, which happened on Monday, August 27, 2018. Fielder met both defendants at the Miami courthouse when they surrendered and he attended their initial appearances.

When the Defendants were arrested, this triggered Fielder to do a number tasks on

---

[11]  Javat has continuously been in custody, since his arrest.

[12]  Fielder did not engage in any other travel during this twenty-day period, or take any days off from work for vacation.

this case. He prepared reports of arrests and communicated with other arresting agents to get their reports. He began a review of all the evidence and reports generated during the investigation to collect information for upcoming discovery production, and discussed this, among other matters, with the lead Assistant U.S. Attorney. These discussions included Fielder attending meetings at the U.S. Attorneys Office. Fielder knew that one of the defendants was involved in a lawsuit and, to avoid the possibility of the prosecution team viewing that defendant's privileged communications, Fielder contacted other FDC/OCI agents to identify who could participate in a taint review team, and then put those agent(s) in touch with the U.S. Attorneys Office.

Fielder began to prepare his search warrant application on or about Wednesday, August 29, 2018. He was the only agent knowledgeable enough about the case to be able to prepare the application. [13] To prepare the search warrant package, he reviewed documents in the case, including emails from the defendant, that the government acquired in the course of its investigation. Fielder also solicited advice from other agents who had more experience than he did with the drafting of search warrant applications for electronic devices. As he drafted the warrant application, Fielder had discussions regarding where the devices would be forensically searched—here, or in the Washington, D.C. area—and it was decided that the search would take place here. In the process Fielder realized that the devices would have to be in this District, before he could seek a search warrant from this

---

[13] Although other agents assisted Fielder on some matters, they did not have a broad enough understanding of the investigation to prepare the application.

Court,[14] and he arranged to have them sent here, which took a couple days.

Fielder emailed his proposed search warrant application to the lead Assistant U.S. Attorney on Monday, September 3, 2018, which was Labor Day, and a federal holiday when Fielder's office was officially closed. He believes the Assistant U.S. Attorney made some changes to his draft. It was three days later, on Friday, September 7, 2018, that Fielder presented the warrant application to the Court, and as noted, the Court issued the warrant that same day. The government later made a forensic examination of those devices, and according to Javat's Motion, the government seized "millions of communications and documents, which the government has listed as evidence in this prosecution." (ECF No. 177 at 4).

## II.    Legal conclusions

In his Motion, Javat asks the Court to exclude from evidence the laptop computer and the four cellphones the government seized from him at the Dulles Airport, along with any evidence the government later seized when it searched those devices, or derived from that evidence. Javat makes two arguments: first, that the warrantless seizure of those devices was not justified by the search incident to arrest doctrine—the only exception to the Fourth Amendment warrant requirement that the government relies upon—and second, that the government unreasonably delayed securing a search warrant for those devices. For the following reasons, I find that both arguments have merit and call for the exclusion from evidence of Javat's electronic devices, and the evidence seized from them.

---

[14] *See* FED. R. CRIM. P. 41(b)(1).

### A. Warrantless Search of Javat's Messenger Bag was Unlawful

It has long been the law that the Fourth Amendment to the United States Constitution requires that the government must have a search warrant before it can search and seize, unless it can demonstrate the application of one of the recognized exceptions to the Fourth Amendment warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). The government must do so by a preponderance of the evidence.[15] Importantly, "[t]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (citation and quotation marks omitted). The Supreme Court, in a series of decisions that began with dictum in *Weeks v. United States,* 232 U.S. 383 (1914), has recognized that a warrantless search incident to a lawful arrest satisfies the reasonableness requirement of the Fourth Amendment, and is thus an exception to the warrant requirement.

The Court has refined the scope of that exception over time. The first such decision was *Chimel v. California*, 395 U.S. 752 (1969), in which officers arrested the defendant in his home, pursuant to an arrest warrant, and then thoroughly searched the entire house. The Court found that that search was unlawful and wrote the following:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape....In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And

---

[15] Upon a motion to suppress evidence obtained through a warrantless search and seizure, the Government bears the burden of proving "that the challenged action falls within one of the recognized exceptions to the warrant requirement ...." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (emphasis and citation omitted). *See also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (stating that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

> the area into which an arrestee might reach in order to grab a weapon or
> evidentiary items must, of course, be governed by a like rule....There is ample
> justification, therefore, for a search of the arrestee's person and the area
> within his immediate control – construing that phrase to mean the area from
> within which he might gain possession of a weapon or destructible evidence.
> There is no comparable justification, however, for routinely searching any
> room other than that in which an arrest occurs – or, for that matter, for
> searching through all the desk drawers or other closed or concealed areas in
> that room itself.

*Id.* at 763. The Court thus established that incident to arrest, officers may search where an

arrestee might reach, and seize any weapons or evidence. Because the search in *Chimel*

went "far beyond the petitioner's person and the area from within which he might have

obtained either a weapon or .... evidence" the Court found that the search was unreasonable

under the Fourth Amendment and unlawful. *Id*. at 768.

Later, in *United States v. Robinson*, 414 U.S. 218 (1973), the Court made clear that

this search may be made whether or not there is probable cause to believe that the person

arrested has a weapon or is about to destroy evidence. This is because the "potential dangers

lurking in all custodial arrests make warrantless searches of items within the 'immediate

control' area reasonable without requiring the arresting officer to calculate the probability

that weapons or destructible evidence may be involved." *United States v. Chadwick*, 433

U.S. 1, 14-15 (1977) (quoting *Robinson*).

The Supreme Court in *Chimel*, thus set forth the physical scope of a lawful

warrantless search incident to arrest, and in *Robinson*, the Court made clear that the

government need not justify the purpose for its search incident to arrest, if the search fell

within that scope.

In *United States v. Edwards,* 415 U.S. 800 (1974), the Court found that the exception

encompassed the seizure and search of the defendant's clothing at the jail, approximately ten hours after his arrest. The defendant there was lawfully arrested, at about 11:00 p.m., for attempting to break into the post office and he was transported to the local jail where he was held. As the defendant was being jailed, investigators learned that the intruder had pried open a window, leaving paint chips on the window sill. The next morning police purchased clothing for the defendant which they gave to him at the jail, and they seized, without a warrant, the clothing the defendant was wearing at the time of his arrest. Later examination of the clothing identified paint chips that matched those found at the window.

The *Edwards* Court found that it was reasonable to search the defendant at the jail without a warrant for "any evidence of the crime in his immediate possession, including his clothing." *Id.* at 805. The Court noted that it was only after the arrest that the police

> had probable cause to believe that the articles of clothing he wore were themselves material evidence of the crime....But, it was late at night; no substitute clothing was then available for Edwards to wear, and it would certainly have been unreasonable for the police to have stripped respondent of his clothing and left him exposed in his cell throughout the night. When the substitutes were purchased the next morning, the clothing he had been wearing at the time of arrest was taken from him and subjected to laboratory analysis. This was no more than taking from respondent the effects in his immediate possession that constituted evidence of the crime. This was and is a normal incident of custodial arrest.

*Id.* (citations omitted). [16] *Edwards* thus established that the search incident to arrest doctrine encompasses a later search of an arrestee who is in custody, and things in his immediate possession.

---

[16] In its assessment of reasonableness, the Court noted historical evidence of the "routine custom of permitting a jailer to search the person who is being processed for confinement under his custody and control." *Id.* 804, n.6.

In the final Supreme Court decision that bears on the issues now before this Court, *Chadwick*, the Court addressed the temporal scope of a lawful warrantless search incident to arrest of luggage in police custody. The defendants in that case had traveled on an Amtrak train with a 200-pound footlocker, which they removed from the train at their arrival station. Police had probable cause that the footlocker contained narcotics, and they placed the defendants under arrest at the station and seized the footlocker. The officers searched the defendants at that time and found keys to the footlocker. "The agents had no reason to believe that the footlocker contained explosives or other inherently dangerous items, or that it contained evidence which would lose its value unless the footlocker were opened at once." 433 U.S. at 4. The officers transported the defendants and the footlocker to the Federal Building and an hour and a half after the arrests, the agents opened the footlocker without a warrant, and found marijuana. *Id.* at 4-5. The Court found the search of the footlocker was unlawful, as it fell outside the temporal scope of a search incident to arrest.

> [W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. Here, the search was conducted more than an hour after the federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency.

*Id.* at 15 (citations and quotation marks omitted).

Putting together these parameters of the search incident to arrest doctrine and

applying them to the record before this Court, I reach the following conclusions.

First, Flagg and his law enforcement colleagues lawfully arrested Javat at the Dulles airport.

Second, Flagg was entitled to search, at the time of arrest, Javat's person and "the area within his immediate control" for weapons or evidence. *Chimel*, 395 U.S. at 763. Flagg did not need to justify that search with probable cause that Javat had either. *Robinson*, 414 U.S. at 477. Flagg did search Javat's person, when he asked Javat if he had any electronics and Javat pulled a cellphone from his pocket and handed it to the officer. The government's seizure of that phone was lawful because it occurred at the time of arrest and was taken from Javat's person.[17]

Third, the law enforcement officers had the right to search Javat's messenger bag and suitcase when they were with Javat at the airport, again, because they were within his immediate control. *Chimel*, 395 U.S. at 763. In fact, Javat gave the officers reason to believe they might find evidence in the messenger bag, when he told them it held his laptop. They did not, however, search either bag. Rather, they seized both bags and searched them later, sometime after they had brought Javat to the federal jail. We do not know when Flagg searched the bags, other than that this had occurred by August 29, 2019, eleven days after the arrest, as documented by the Inventory of Evidence Flagg prepared on that date, that

---

[17]  At oral argument, Javat's counsel agreed that Javat's cooperative handing over of the cellphone that was in his pocket, for Fourth Amendment purposes, was no different than an officers' seizure of that phone during a pat down. (Tr. at 134-35). Notably, Flagg did pat down Javat minutes later, at the curb outside the terminal, just before he placed Javat in his vehicle. Had Javat not handed the officer his phone earlier, that pat down would have led to the seizure of the cellphone which, under the criteria set forth in *Chimel*, would have been lawful.

identified a total of four cellphones and one laptop, that Flagg had seized for evidence. As Flagg testified, he did not know the messenger bag contained three additional cellphones, until he opened it, at some unstated time.

Fourth, Flagg's search of the messenger bag hours or days after Javat's arrest was unlawful as it was "remote in time [and] place from the arrest, [and] no exigency exist[ed]." *Chadwick*, 433 U.S. at 15. That bag was in Flagg's "exclusive control, and there [was] no longer any danger that [Javat] might gain access to the property to seize a weapon or destroy evidence" and thus the search was "no longer an incident of the arrest." *Id.* Under this circumstance, it would have been reasonable for Flagg to apply for a warrant to search both bags which, of course, he did not do.

The government would have this Court dispense with the *Chadwick* temporal requirement, arguing that the government knew, at the time Javat handed over his messenger bag, that it contained the laptop and cellphones. The government argues this "was the functional equivalent of a hands-on search for the devices, conducted immediately at the very time and location of arrest. There was no remote-in-time-and-place search to uncover them, because the agents did not need to search for them by that point." (ECF No. 261, at 5). There are two fatal problems with this argument. First, it mischaracterizes Flagg's testimony. Flagg testified that Javat told him that his laptop was in the messenger bag,[18] and Flagg only learned about the three additional cell phones when he later opened

---

[18]   Q (by the government): Okay. And you indicated he also gave you a laptop; is that accurate?
A. Yes, sir.
Q. Well, specifically, how did he give you the laptop?
A. I believe the laptop was in the messenger bag, and he gave

15

that bag.[19]   That is, when Flagg took the messenger bag, he did not know its contents, he knew only that Javat said a laptop was inside. Second, the government's argument is entirely inconsistent with *Chadwick*. The officers there had probable cause that the footlocker contained drugs, just as Flagg had probable cause that the messenger bag held a laptop computer. The *Chadwick* officers chose to detain the defendants and an hour-and-a-half later, when there was "no exigency" (the defendants were in custody) they opened the footlocker and searched it. *Chadwick*, 433 U.S. at 15. By this point, the search of that property was "no longer an incident of the arrest" and the search required a warrant. *Id.* The *Chadwick* officers' reasonable belief that the footlocker held evidence (and Flagg's reasonable belief that the messenger bag did too) was not, as the government argues, the "the functional equivalent of a hands-on search". (ECF No. 261, at 5). The government had a choice: either search the messenger bag at the time of arrest, or wait to do so later pursuant

---

us the messenger bag containing the laptop.
Q. Did he indicate to you that there was a laptop in there?
A. Yeah, he told us he had a laptop with him.
Q. So you took the messenger bag and the suitcase?
A. Yes, sir.
(Tr. at 100)

[19] Q (by the government): Now, later on, did you go into the messenger bag with the laptop?
A. Yes, sir.
Q. And what did you find when you went into that messenger bag?
A. Additional -- three additional cell phones and the laptop, of course.
Q. So would it be accurate to say that when you first had this interaction with the Defendant, you were only aware of one cell phone and one laptop?
A. I believe so, yes, sir.
(Tr. at 101).

to a search warrant.[20]

Fifth, Flagg's warrantless search of the bags well after he left Javat at the jail, is not justified by the rule set forth in *Edwards*, that officers may search an arrestee's person, and "effects in his immediate possession" after he has been placed in custody. *Edwards*, 415 U.S. at 804-5. The suitcase and messenger bags were not in Javat's "immediate possession" when Flagg searched them, and thus his search plainly falls outside the *Edwards* rule. The *Chadwick* Court made clear that this distinction is what sets the case apart from *Edwards*, when it ruled that "[o]nce law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property...a search of that property is no longer an incident of the arrest." *Chadwick*, 433 U.S. at 15 (emphasis added).

The government cites two Eleventh Circuit decisions that apply *Edwards* (*see* ECF No. 261, at 4), and they do not lead to a different conclusion. The first, *United States v. Baldwin*, 644 F.2d 381 (5th Cir. 1981)[21] is short on facts and analysis. Its holding was later

---

[20] The *Chadwick* Court addressed the finer point, that the defendants' "principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker....the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private." 433 U.S. at 13 n.8. Applied to these facts, Flagg's seizure of the messenger bag was not the equivalent of his opening and searching it at the time of arrest. His choice to later, when there was no exigency, open that bag, required that he seek a search warrant.

[21] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

summarized by the Eleventh Circuit, in *United States v. Sonntag*, as follows: "the former Fifth Circuit held that a search of a defendant's wallet which occurred several hours after arrest and after the defendant had been transported for booking was a valid search incident to arrest." *United States v. Sonntag*, 684 F.2d 781, 786 (11th Cir. 1982). The *Sonntag* Court relied upon *Baldwin's* holding to again uphold a warrantless search of a defendant's wallet that "took place after Sonntag had been transported to Tampa for booking." *Sonntag*, 684 F.2d at 786. Following the *Baldwin* analysis, the *Sonntag* Court found the search was valid incident to arrest. *Id.* at n.4. In this case, at Flagg's direction, Javat gave his watch and wallet to his wife, before they left the airport. The decisions in this Circuit that found the search of an arrestee's wallet at the time of booking do not govern Flagg's search of the messenger bag and suitcase, which Flagg had long before separated from Javat.[22]

Finally, Javat's argument, made in his reply memorandum, (ECF No. 241), and at oral argument at the conclusion of the evidentiary hearing, that the government's seizure of Javat's electronics was unlawful because their incriminating nature was not "immediately apparent," is without merit on the facts of this case. Flagg had, or had read, the arrest warrant, which stated the charges in the Indictment, and Fielder had given Flagg

---

[22] In its supplemental briefing, the government also relies on a decision from the Eighth Circuit where that court held a post-arrest search of a defendant's purse, conducted at the detention center, was reasonable as incident to her arrest. *Curd v. City Court of Judsonia, Arkansas*, 141 F.3d 839, 842 (1998). That case is easily distinguishable, as the search concerned the defendant's purse which was placed in close proximity to her as she was being booked. *Id*. at 841, 843. The Eighth Circuit explicitly noted that courts have generally concluded that a purse, "unlike luggage," is an object immediately associated with the person, and that "searches of the person and articles immediately associated with the person of the arrestee are measured with a different, more flexible constitutional time clock" than searches of "luggage or other personal property." *Id*. at 843 (quotations and citations omitted).

a brief overview of the investigation. It was reasonable for Flagg to believe that Javat's electronics might hold evidence of his participation in wire fraud involving the purchase and sale of FDA-regulated products. In short, the potential evidentiary value of his cell phone and laptop was apparent.[23]

In sum, I conclude that the government has not met its burden to establish that its search of Javat's messenger bag falls within the search incident to arrest doctrine, and this is reason alone, for the suppression of evidence.

### 1.      Exclusion of Evidence

The exclusionary rule, first announced for the federal courts in *Weeks v. United States*, 232 U.S. 383 (1914), and later extended to state courts by *Mapp v. Ohio*, 367 U.S. 643 (1961), makes impermissible the introduction of evidence obtained in violation of a defendant's Fourth Amendment rights. Flagg searched the messenger bag in violation of Javat's Fourth Amendment rights, and the contents of that bag – three Samsung cellphones and a laptop – must be excluded from evidence. Further, because the government relied upon the results of that unlawful search to procure the warrant to search the electronic devices in that bag, the information found during the search of those devices must also be excluded from evidence. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (evidence that the government came at "by the exploitation of that illegality . . .may not be used

---

[23]   Javat relies upon a series of cases that apply the plain view doctrine as support for his argument. Javat argues that the element of that doctrine, that the incriminating nature of the object seized must have been immediately apparent, informs when an officer may lawfully seize evidence incident to arrest. (*See* ECF 241 at 2-4; 260 at 6). Javat cites no authority for the importation of this plain view doctrine element into a search incident to arrest analysis. I need not reach this legal argument, given the factual inapplicability of his claim.

against" the defendant).

There is one electronic device that the government did not obtain from the unlawful search of Javat's messenger bag – the Samsung cellphone seized from Javat's person. Although the search warrant the government later obtained included that cellphone, this lawfully-seized device must nonetheless be excluded from evidence. When the government seizes an individual's property, it must make a clear record and chain-of-custody of that seizure and retention of evidence, especially so when that evidence is fungible or subject to exchange. The government did not make that record here, which leaves it unable to identify that particular Samsung cellphone that was lawfully searched for and seized incident to arrest. On this record, all four of Javat's Samsung cellphones, and his laptop computer, and the evidence later taken from them pursuant to a warrant-authorized forensic search, must be excluded from evidence.

### B.   The Twenty-day Delay Applying for a Search Warrant was Unreasonable

For completeness, I address Javat's second argument that even if the government's search of Javat's messenger bag was lawful, his electronics and the evidence derived from them, should still be suppressed because the government unreasonably delayed in securing a search warrant for those devices. Javat primarily relies upon the Eleventh Circuit's decision in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), as authority for this argument.

In *Mitchell*, the Eleventh Circuit found that a twenty-one day delay in securing a search warrant for that defendant's computer hard drive was unreasonable on the facts of that case. The decision is premised on the notion that an otherwise lawful seizure of

evidence can violate the Fourth Amendment if the "police act with unreasonable delay in securing a warrant." *Id.* at 1350. Courts must determine whether a delay is unreasonable "in light of all the facts and circumstances and on a case-by-case basis." *Id.* at 1351 (citation and quotation marks omitted). This requires a "careful balancing of governmental and private interests." *Id.* (citations and quotation marks omitted).

The Eleventh Circuit has since written, in depth, on this subject in *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012) and *Thomas v. United States*, No. 18-12157, 2019 WL 2158775 (11th Cir. 2019). In these cases, the Court made clear that *Mitchell* did not establish a bright-line rule or a presumption that a delay exceeding 21 days in getting a warrant is unreasonable. *Laist*, 702 F.3d at 618; *Thomas*, 2019 WL 2158775 * 11-12. To the contrary, those decisions emphasize the very case-specific nature of this analysis, and identify a number of factors that courts should consider in their balancing of the government's and defendant's interests. Those factors include: (1) the significance of the interference with the defendant's possessory interest, (2) the duration of the delay, (3) whether the defendant consented to the seizure, (4) the government's legitimate interest in holding the property as evidence, (5) the government's diligence in pursuing a search warrant. *Laist*, 702 F.3d at 613-14. The government's diligence, in turn, can be measured by a number of considerations, which may include: (1) the nature and complexity of the investigation, (2) whether "overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case", (3) the quality of the warrant application and the amount of time it should take to prepare it. These factors "are by no means exhaustive." *Laist*, 702 F.3d at 614.

A "careful balancing of governmental and private interests"[24] in this case begins with acknowledgement of Javat's significant possessory interest in his Samsung smartphones and laptop computer. Courts consistently recognize our reliance on our smartphones and computers to store our important personal information. *See e.g., Riley*, 134 S.Ct. at 2485 ("Cell phones ... place vast quantities of personal information literally in the hands of individuals.") We know that Javat, a businessman, was traveling internationally and had his laptop with him in his personal messenger bag. Although this record includes no information about Javat's particular use of that laptop, it is a fair assumption that he used it to conduct his personal and business affairs while he was away from home. We also know that when he arrived at the airport, Javat carried one cellphone on his person. We know nothing about the purpose of the other three phones later found in his messenger bag; we only know that all four phones were Samsung smartphones.

The government argues, rightly, that Javat's possessory interest in these devices was diminished, in the twenty-day period before the search warrant was issued, because he was in federal custody. The Bureau of Prisons would not have allowed Javat access to his cellphones or laptops. So, upon his arrest, Javat would have been without those devices, regardless of the government's seizure. Javat, however, is also correct that had his family been allowed to keep those devices at the time of his arrest, Javat could have asked them to access information on his behalf. More than two weeks after his arrest, Javat's wife did ask Flagg for the return of all her husband's possessions seized at the airport. Flagg responded by delivering to her everything but Javat's electronics. On this record, I find that

---

[24] *Mitchell*, 565 F.3d at 1351.

Javat maintained a possessory interest in the devices, but a diminished one.[25]

Javat did not consent to the seizure of his cellphones and laptop, and this weighs in his favor. The twenty-day length of the delay, to borrow the phrase used in *Laist*, and *Thomas*, was "not insubstantial." *Laist*, 702 F.3d at 616 (a twenty-five day delay); *Thomas*, 2019 WL 2158775 *12 (a thirty-three day delay). I find that the length of the delay here, weighs modestly in favor of Javat.

As for the government's diligence, I find that this weighs modestly in the government's favor. Agent Fielder, the case agent, plainly had his hands full as of the moment of Javat's arrest on Saturday August 18, 2019. For Fielder, the first nine days that followed that arrest (that is, through Monday August 27, 2018), were consumed with the arrests of the other defendants in this case and their initial court appearances, as well as travel to and from Javat's detention hearing in Virginia. Two days later, on Wednesday, August 29, 2018, Fielder began to draft the search warrant package, which he submitted to the lead prosecutor six days later, on Monday, September 3, 2018. While the search warrant application that Fielder prepared certainly did not require six full days of his time, I do not believe that constitutional reasonableness necessarily mandates that once Fielder began drafting the warrant application, it was his sole occupation. In fact, it was not. Fielder was a supervisor in the FDA/OCI Planation, Florida field office, and it would not be reasonable

---

[25] In contrast, the defendants in *Mitchell* and *Laist* were not arrested when the government seized their computers, which meant they had a stronger possessory interest in the devices the government took from them. *Mitchell*, 565 F.3d at 1349; *Laist*, 702 F.3d at 611. The *Laist* defendant's possessory interest in his devices, after seizure, was somewhat diminished however, because the agents allowed him to copy onto a different external hard drive, some documents he needed for school. *Id.* at 611, 616.

to expect him to abandon all supervisory responsibilities once the government seized Javat's devices. The same is true for Fielder's other investigations or cases, that required some of his attention during this period. Moreover, as important as it was for Fielder to timely submit a search warrant, Fielder was also acting responsibly when he began the process of gathering evidence that the government would soon have to disclose to the defense. This obligation would be triggered upon the Court's issuance of the standing discovery order at the first arraignment, which could take place within days of the initial appearances.

Fielder testified that he was the only agent sufficiently knowledgeable about the case who could draft the search warrant application. This too appears reasonable given Fielder's primary role in this lengthy and complex investigation. The length and complexity of the investigation is a factor the Eleventh Circuit has recognized can support a finding of diligence, and I find this weighs in the government's favor here. *Laist*, 702 F.3d at 617 (a year-long investigation of child pornography "of this scope and complexity requires more time to prepare a warrant").

As for the warrant application itself, it was simple and relatively straightforward, and does not suggest on its face that a significant period of time was needed for its preparation.[26]  Fielder's affidavit was not lengthy; it was barely eight pages. While length can be a factor, it is not dispositive. To the contrary, hastily drafted warrants are often unnecessarily lengthy and unfocused (an "everything but the kitchen sink" approach); this does not describe Fielder's affidavit. To prepare his affidavit, Fielder testified that he

---

[26]  The search warrant and application are filed at ECF No. 177-1.

reviewed evidence in the case, in particular emails from Javat, along with other documents, (Tr. at 72, 77-8), and this is evident in the "Probable Cause" section of his affidavit. Fielder also testified that he sought advice from other agents who had more experience than he, with search warrant applications for electronic devices. Presumably this is how he got the mostly boilerplate language in the "Electronic and Storage and Forensic Analysis" section. Fielder further testified that as he prepared the warrant, he explored who would conduct the forensic search, and where this would take place, which led Fielder to realize that he had to arrange for the devices to be delivered to him in South Florida, which evidently took a couple days.

Agent Fielder struck me as diligent and sincere in his efforts to manage competing responsibilities during these first twenty days after Javat's arrest. Notably, that period included three weekends, including the long Labor Day weekend, and to Fielder's credit, he completed his search warrant package on Labor Day; a day when he was legally entitled to not be at work. Fielder's diligence stands in sharp contrast to the officer in *Mitchell,* who "simply believed that there was no rush." 565 F.3d at 1353. And, while in hindsight Fielder might have reprioritized some tasks to complete his search warrant application earlier, hindsight is not the measure of reasonableness. *Thomas*, 2019 WL 2158775 *13.

In the end, the decisive factor in the balancing test is the legitimacy of the government's interest in holding the laptop and cellphones in that twenty-day period. As noted earlier, the government had a reasonable belief that Javat's cellphones and laptop likely contained evidence of Javat's alleged participation in a wire fraud conspiracy, and this would have supported its intention to secure a warrant to search those devices, had

25

they been lawfully seized. If the government's search and seizure had been lawful, I would have concluded that the balancing of the government's and Javat's interests sufficiently favored the government such that the twenty-day delay was reasonable.

But, the government's warrantless search of the messenger bag was not lawful, and it must follow that its twenty-day possession of the three Samsumg phones and the laptop found in that bag was not legitimate. The government did legitimately hold the one Samsung smartphone that it took from Javat at the airport. But, it chose to submit one search warrant application for all five devices, and as already noted, the government does not know which of those phones was the one lawfully seized. I conclude that the illegality of the government's delayed search of the messenger bag decidedly tips the balance, such that the twenty-day delay in securing the search warrant was unreasonable, and was thus a violation of the Fourth Amendment. On this record, this serves as a second justification for the suppression of evidence.

## III.     Recommendation and Objections

For the foregoing reasons, I respectfully **RECOMMEND** that the Court **GRANT** Defendant Javat's Motion to Suppress Electronic and Documentary Evidence, (ECF No. 177).

**No later than August 6, 2019**, the parties may file any written objections to this Report and Recommendation with the Honorable Donald M. Middlebrooks. Judge Middlebrooks has advised that he will not extend that deadline or entertain responses to any objections. The parties should be aware that Judge Middlebrooks is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject

of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b), 11th Cir. R. 3-1 (2016).

**DONE AND ORDERED** in chambers this 30th day of July, 2019, at Miami, Florida.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Donald M. Middlebrooks
       Counsel of record