# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.:18-20668-CR-MIDDLEBROOKS/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BYRAMJI MONECK JAVAT,

    Defendant.

_____/

## ORDER ON REPORT AND RECOMMENDATION (DE 287)

THIS CAUSE is before the Court on Magistrate Judge Chris McAliley's Report and Recommendation (DE 287) recommending that I grant Defendant Byramji Moneck Javat's Motion to Suppress Electronic and Documentary Evidence (DE 177). The United States filed partial objections to the Report on August 6, 2019. (DE 301). Javat filed partial objections on the same date. (DE 302). I have carefully considered the Report, the written submissions of the parties, applicable law, and the record as a whole. For the reasons set forth below, I will adopt Judge McAliley's Report and Recommendation and grant Javat's motion to suppress.

### BACKGROUND

On August 7, 2018, Javat and five co-defendants were charged by way of an Indictment with wire fraud, wire fraud conspiracy, theft of pre-retail medical products, and conspiracy to obtain pre-retail medical products by fraud and deception. (DE 3). On August 18, 2019, Special Agent Eric Flagg with the Food and Drug Administration's Office of Criminal Investigations ("FDA/OCI") arrested Javat at Dulles International Airport after being briefed on the investigation

by the case agent, Justin Fielder, also of FDA/OCI. Flagg approached Javat at the airline ticket counter and explained that agents had a warrant for his arrest. Flagg had previously seen Javat enter the airport with a roller suitcase and a messenger bag. At the time of arrest, the suitcase was at Javat's feet, and the messenger bag was either over his shoulder or resting on top of his suitcase.

Flagg asked Javat for his electronics and Javat removed a Samsung smartphone from a pocket and turned it over to agents. Javat said he had a laptop computer in his messenger bag and handed the bag to Flagg. Flagg took the phone, messenger bag, and Javat's suitcase and then escorted Javat outside the terminal and into Flagg's car. Flagg put the items he obtained from Javat in the trunk. Javat was transported to the jail.

At an unknown time thereafter, Flagg searched Javat's messenger bag and found a laptop computer and three additional Samsung smartphones. The date of the search is not known, but it was apparently conducted before August 29, 2018, the date on which an inventory was prepared. On September 5, 2018, in response to a request from Javat's wife, Javat's belongings were returned to her, with the exception of the laptop and phones. Flagg also provided Javat's Virginia lawyer with a copy of the Inventory of Evidence he had prepared, which listed the computer and four phones. These items were later sent to Fielder, the case agent, in Miami. At the evidentiary hearing, the government could not identify which phone was seized from Javat's person and which three were found in the messenger bag.

On September 7, 2018, twenty days after Javat's arrest, Agent Fielder obtained a search warrant for the five electronic devices. Upon forensic examination of these items, evidence was seized which the government intends to utilize at trial. Fielder testified that the delay in obtaining a warrant was attributable to other demands on his time, including work related travel, the arrests of Javat's codefendants, and various supervisory duties.

**DISCUSSION**

Javat filed a motion to suppress the laptop and phones, and all evidence derived therefrom. In resolving Javat's motion, Magistrate Judge McAliley considered the following issues: (1) whether the government's warrantless search of Javat's messenger bag, which led to the discovery and seizure of his electronic devices, fell outside the scope of the search incident to arrest doctrine, and (2) whether the government unreasonably delayed in applying for a search warrant to search the devices themselves. After ordering supplemental briefing, United States Magistrate Judge Chris McAliley held a hearing, and ultimately issued a Report and Recommendation, recommending that Javat's Motion to Suppress be granted. (DE 287).

**A. Search Incident to Arrest**

For its position that Javat's motion should be denied, the government relies upon the search incident to arrest exception to the warrant requirement. Judge McAliley's Report succinctly summarizes applicable Supreme Court precedent on this doctrine: Incident to arrest, officers may search where an arrestee might reach, and seize any weapons or evidence in order to prevent its concealment or destruction. *Chimel v. California,* 395 U.S. 752 (1969). Such a search (confined to an area within the arrestee's immediate control) may be made regardless of whether probable cause exists to believe that the person arrested has a weapon or is about to destroy evidence. *United States v. Robinson,* 414 U.S. 218 (1973). Moreover, the search incident to arrest doctrine encompasses a *later* search of an arrestee who is in custody, and things in his immediate possession. *United States v. Edwards,* 415 U.S. 800 (1974). However, "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists." *United States v. Chadwick,* 433 U.S. 1 (1977).

In Javat's case, agents *seized* the messenger bag at the time of arrest, but waited until later to search it.[1] Although it is not known, on this record, when exactly Agent Flagg searched the bag, it is not disputed that when the search ultimately occurred, the bag was in the exclusive control of the government, and Javat was not in a position to gain access to it. Thus, the issue presented on these facts is whether agents' subsequent search of Javat's messenger bag still fell within the scope of a lawful search incident to arrest. I agree with Judge McAliley's conclusion that it did not.

I see no meaningful distinction between Javat's case and the facts presented in *Chadwick*. In *Chadwick*, officers had probable cause to believe that a footlocker which the defendants were traveling with on an Amtrak train contained narcotics. Probable cause was based upon a canine alert, visual examination of the footlocker (it seemed too heavy for its size), and the presence of talcum powder (a substance often used to mask the odor of marijuana). Officers arrested the defendants and seized the footlocker. A search of one of the defendants at that time yielded keys to the footlocker. Officers transported the defendants and the footlocker to a federal building and subsequently opened the footlocker without a warrant, finding marijuana. This search of the footlocker occurred approximately an hour and a half after the arrests. The Court held that the search fell outside the lawful temporal scope of a search incident to arrest. In this case, Javat's messenger bag was searched under very similar circumstances: Javat had been arrested, thereby separated from the bag, which was then transported by agents and searched only later, at a time

---

[1] While it is clear that the search incident to arrest exception would have permitted Agent Flagg to search the messenger bag while at the scene of Javat's arrest, I question whether seizure of the entire bag without searching it at the scene was appropriate, as discussed in the next section of this Order. Javat raises this issue in his objections to the Report. (DE 302 at 6-7). However for purposes of argument here, I will assume that it was lawful for agents to seize the bag at least temporarily, in anticipation of conducting a search of its contents at a later time.

when agents would have had no reason to believe there was any imminent need to protect safety or prevent destruction or concealment of evidence.

In its objections to the Report, the government argues that it would have been lawful for agents to search the messenger bag at the scene of Javat's arrest in the airport, at the time they took Javat into custody. I agree, but this is not what agents did. The government goes on to assert that since agents *knew* that the bag contained a laptop, it was not *necessary* for them to open it at the scene and search it, therefore *Chadwick* should not apply here.[2] According to the government, Flagg's actual knowledge that the bag contained a laptop, premised upon Javat's informing them of that fact, "was the functional equivalent of a hands-on search for the devices, conducted immediately at the very time and location of arrest." (DE 261 at 5). I disagree with the government's reasoning and analysis on this point.

When Flagg took the messenger bag, all he knew is that Javat *said* there was a laptop in it; he did not have actual knowledge of its contents, or the "functional equivalent" of actual knowledge, as the government suggests. (Indeed, I think that it is probably rarely the case that agents take as binding truth everything a defendant tells them at the scene of an arrest.) I agree with Judge McAliley that at most, Flagg had a firm basis upon which to conclude that the messenger bag contained a laptop (given Javat's statements), and that this is indistinguishable from the officers in *Chadwick* having probable cause to believe that the footlocker contained drugs (given the canine alert and officers' visual observations). In this sense, the government's effort to

---

[2] Analytically, the government draws a distinction between the phones and the laptop. As for the laptop, the government relies on this idea of the messenger bag having been, in effect, "searched" at the scene of the arrest by virtue of the fact that Javat told them the bag contained a laptop. It is not clear what the government's theory is with respect to the appropriateness of the seizure of the cell phones, which agents did not know were in the bag until Agent Flagg conducted the actual search.

5

distinguish *Chadwick* – arguing that the officers in that case "had no idea what was in the footlocker" (DE 301 at 7) – is unavailing. To the contrary, officers had compelling reasons to believe that the footlocker contained narcotics. And the Supreme Court did not view that as the "functional equivalent" of a search on the scene, thereby obviating the need to later obtain a warrant.

Moreover, contrary to the government's assertion in its objections, I find that Javat did maintain some expectation of privacy in the bag's contents. Even if he voluntarily disclosed to agents the bag had a laptop in it, thereby diminishing the expectation of privacy somewhat, he did *not* inform them about the three cell phones also contained in the bag. For this reason, I do not think Javat can be said to have abandoned his privacy interests.

The government accurately articulates the "cardinal principle that Fourth Amendment analysis and the exclusionary rule are nuanced, fact-specific, and defined by reasonableness." (DE 301 at 4). I just think that in evaluating the circumstances here, it was not necessary and therefore not reasonable to search Javat's messenger bag without first obtaining a warrant, given that either hours or days had passed between the time of arrest and the time the messenger bag was searched. The fundamental purpose of the search incident to arrest exception is to ensure safety and safeguard evidence. Neither of these concerns were present at the time Javat's messenger bag was searched. Nor did any other compelling reason or other exigency exist which would justify bypassing the warrant requirement.

**B. Inventory Search**

Even if the electronic devices obtained from Javat's messenger bag were not validly seized under the search incident to arrest doctrine, the government argues that the agents would have inevitably discovered the devices during an inventory search of the bag. (*See* DE 261 at 7–8).

The Supreme Court has established that the inventory search constitutes a well-defined exception to the warrant requirement: "The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search." *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) (citing *South Dakota v. Opperman,* 428 U.S. 364 (1976)). The justification, rather, is rooted in "the caretaking function of the local police to protect the community's safety." *Opperman,* 428 U.S. at 374. The inventory search is properly cognized as an incidental administrative step following arrest and preceding incarceration. *Lafayette*, 462 U.S. at 643.

To determine whether the search of Javat's messenger bag was unreasonable, I must "balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). In *Lafayette*, in which the Supreme Court upheld the warrantless search of a shoulder bag at the police station following the defendant's arrest, the Court explained the legitimate governmental interests served by inventory searches:

> A range of governmental interests support an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the stationhouse. A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. Arrested persons have also been known to injure themselves—or others—with belts, knives, drugs or other items on their person while being detained. Dangerous instrumentalities—such as razor blades, bombs, or weapons—can be concealed in innocent-looking articles taken from the arrestee's possession. The bare recital of these mundane realities justifies reasonable measures by police to limit these risks—either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure.

462 U.S. at 646. *See also Opperman*, 428 U.S. at 369 (noting that the procedures used by police departments to secure and inventory an impounded automobile's contents developed in response

to three distinct needs: "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger") (internal citations omitted).

The Court has elsewhere noted that inventory searches are not to be used as a "ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). To prevent this, inventory searches must be conducted pursuant to a police department's established policy or practice and must not be permitted "so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Id.* (citation omitted).

It is undisputed that agents conducted an inventory of the items seized from Javat at the airport, and that this inventory expressly identified the four electronic devices obtained from the messenger bag. But it is also apparent that the need for an inventory of the messenger bag was obviated by the fact that Javat's wife and two children were with him at the airport at the time he was arrested. Antecedent to the question of whether the inventory search was proper is the question of whether the bag was properly in police custody. *See United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988) (noting that the court had to consider whether defendant's vehicle was properly impounded before considering the contested inventory search). Indeed, "[a]n *Opperman* inventory search permits a thorough search of property lawfully in police custody *as long as that search is consistent with the police caretaking function*." *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985) (emphasis added).

Agent Flagg testified at the hearing that he and the other officers directed Javat to give his watch and wallet to his wife. (Tr. 106:3–107:10). With respect to these possessions, Agent Flagg affirmed that "the protocol was to have [Javat] give it to a responsible party." (Tr. 107:10). If a

8

"responsible party" was present at the scene of the arrest and able to take possession of the arrestee's property, the arresting officer's seizure of the arrestee's property cannot be considered to fall within the community caretaking function.[3] The government makes no argument that the seizure of Javat's messenger bag served to protect the community. Nor does the government argue that the seizure served to protect his property while it remained in police custody, to protect the police against claims or disputes over lost or stolen property, or to protect the police from potential danger. *See Opperman*, 428 U.S. at 369. Indeed, contrary to the Court's warnings in *Wells* against the pretextual uses of inventory searches, Agent Flagg's testimony may even be interpreted to indicate that it was retained at the time of arrest with explicit investigatory intent. (*See* Tr. 114:7–10) (Q: And just to be clear, you were going to – you were going to take – you were going to take Mr. Javat's suitcase and messenger bag, regardless, as part of the arrest; is that correct? A: Yes, sir.).

In light of the foregoing, I determine that the seizure of Javat's messenger bag cannot be justified under the community caretaking function of law enforcement. Accordingly, to admit the evidence found within the bag as lawfully obtained pursuant to an inventory search would improperly expand the doctrine beyond its stated purposes and create the potential for its misuse as a "ruse for general rummaging." *Wells*, 495 U.S. at 4. The government's alternative argument is thus rejected.

---

[3] In none of the inventory search cases cited by the government is there any indication that other responsible parties were available, at the time of the arrest, to take possession of the evidence retained by the arresting officers and subsequently deemed validly discovered through that doctrine. An unconvincing exception may be found in *United States v. Jean*, 636 F. App'x 767, 768 (11th Cir. 2016)—while the defendant in that case was arrested in the vicinity of his girlfriend's home, he was being arrested for aggravated stalking.

## CONCLUSION

I have reviewed the objections of both parties, Judge McAliley's Report, and the record as a whole. I do not find that any issues raised in the parties' objections, other than those addressed above, merit any discussion here. Upon review, I agree with Judge McAliley's conclusion that agents searched the messenger bag in violation of Javat's Fourth Amendment rights, and the contents of that bag – three cell phones and a laptop – must be excluded from evidence, in addition to the evidence later found in those devices when they were later searched pursuant to a search warrant. Moreover, even though the one phone seized from Javat's person at the time of arrest would otherwise be admissible, I agree that given the murky chain of custody with respect that particular phone, none of the phones seized that day, or any evidence later obtained from them, are admissible.

Accordingly, it is **ORDERED AND ADJUDGED** that Magistrate Judge McAliley's Report and Recommendation (DE 287) is hereby **ADOPTED**. For the reasons set forth therein and the additional reasons articulated in this Order, Defendant Javat's Motion to Suppress (DE 177) is **GRANTED**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 8th day of August, 2019.

Donald M. Middlebrooks
United States District Judge

Copies to:   Counsel of Record